**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
CHRISTOPHER M. LOZITO,

<em>Plaintiff</em>,

<strong>MEMORANDUM AND<br/>ORDER</strong>

-against-                                    21-cv-05969 (JMW)

COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

<em>Defendant</em>.

--------------------------------------------------------------X

**A P P E A R A N C E S:**

> Howard D. Olinsky, Esq.
> **Olinsky Law Group**
> 250 South Clinton Street, Suite 210
> Syracuse, NY 13202
> *Attorney for Plaintiff*
>
> Social Security Administration
> **Office of the General Counsel**
> **c**/o Office of Legal Operations/Blake Pryor
> 6401 Security Boulevard
> Altmeyer Building, Room 617
> Woodlawn, MD 21235
>
> -and-
>
> Jeremiah Hayes, Esq.
> **Social Security Administration, Office of Program Litigation**
> 6401 Security Boulevard
> Baltimore, MD 21235
>
> -and-

1

Shannon Fishel, Esq.
**Social Security Department**
**C/O SSA Office of the General Counsel**
6401 Security Blvd, 1520 Annex
Baltimore, MD 21235
*Attorneys for Defendant*

**WICKS**, Magistrate Judge:

Plaintiff Christopher M. Lozito ("Plaintiff" or "Lozito") seeks review and reversal of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant"), reached after a hearing before an administrative law judge ("ALJ"), the result of which denied his application for a period of disability and disability insurance benefits ("DIB") benefits under Title II of the Social Security Act (the "Act") (hereafter, the "ALJ's Decision"). In response, Defendant seeks to remand this case for further administrative proceedings because, Defendants contend, the ALJ "failed to make the necessary factual findings in determining that Plaintiff was not disabled." (ECF No. 18-3.) Now before the Court is: (i) Plaintiff's Motion for Judgment on the Pleadings (ECF No. 18-1); and (ii) Defendant's Cross Motion to Remand. (*See* ECF No. 18-3.) For the reasons stated herein, Plaintiff's Motion (ECF No. 18) is **GRANTED** *in part* and **DENIED** *in part*, the Commissioner's Cross Motion (ECF No. 18-3) is **GRANTED**, and ALJ's Decision is **REVERSED and the matter is REMANDED**, consistent with this Order.

## <u>BACKGROUND</u>

I.   <u>*Factual Background*</u>

A.   <u>*Plaintiff's Application for Disability Benefits*</u>

The following facts are taken directly from the parties' Joint Stipulation of Facts at ECF No. 18-7. On January 7, 2019, Plaintiff protectively filed applications for Child Disability Benefits and Supplemental Security Income Benefits, alleging disability beginning September 1,

1974, due to left eye blindness, history of seizures, neurological disorder and visual motor disorder, a depth perception problem, short- term memory loss, right eye glaucoma, polycythemia vera, and a learning disability. (*Id*. at 3, ¶ 1.) Plaintiff's claims were initially denied on May 1, 2019, and upon reconsideration on August 28, 2019. (*Id*. at ¶ 2.) Plaintiff and his attorney appeared at a hearing before ALJ Robert R. Schriver on December 15, 2020. (*Id*. at ¶ 3.) After the hearing, held on December 15, 2020, the ALJ issued an unfavorable decision dated February 9, 2021. (*Id*. at ¶ 4.)

B.     *The ALJ's Decision*

In his decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date and had not attained age 22 as of the alleged onset date. (*Id*. at 4, ¶ 5.) He found that Plaintiff suffers from the severe impairments of polycythemia vera, blindness in the left eye, a learning disability, an adjustment disorder with depressed mood, astigmatism, myopia, presbyopia, right eye glaucoma, and chronic fatigue syndrome, none of which meets or medically equals the severity of a listed impairment either singly or in combination. (*Id*.) The ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b), except that: he can engage in frequent crouching, kneeling, handling, fingering. (*Id*.) He can engage in activities that require frequent fine visual acuity, but none that require depth perception. (*Id*.) He must avoid concentrated exposure to workplace hazards, and he cannot operate a motor vehicle. (*Id*.) He can perform simple work tasks only, with only occasional decision-making, and occasional interaction with supervisors, coworkers, and the general public. (*Id*.)

The ALJ found Plaintiff has no past relevant work but remained capable of performing other work existing in significant numbers in the national economy. (*Id*.) Specifically, he

3

concluded Plaintiff could work as a mail clerk (DOT 209.687-026), a router (DOT 222.587-038), and a marker (DOT 209.587-034). (*Id.*) Thus, the ALJ determined Plaintiff has not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the decision. (*Id.*) On August 24, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner. (*Id.* at ¶ 6.)

### C.    *Plaintiff's Age, Education, Work Experience, and Prior Medical Treatment*

Born in September of 1974, Plaintiff was 0 years old on the alleged onset date,[1] and 46 years old as of the date of the ALJ's decision. (*Id.* at 5, ¶ 1.) He received special education and graduated high school with a regular diploma. (*Id.* at ¶ 2.) He reported previously working in a factory warehouse for five months in 1994 but has no past relevant work for the purpose of his disability claims. (*Id.* at ¶ 3.) In a motor function test performed in 1985, seven years prior to the alleged onset date of disability, Plaintiff scored below 50% in all areas. (*Id.* at ¶ 1.) On October 21, 1986, four years prior to the alleged onset date, Robert Ohebshalom, M.D., documented Plaintiff's severe problem with depth perception and inability to tell where cars were in relation to himself when crossing the street. (*Id.*)

In September 2001, when Plaintiff was 27, Mark Fleckner, M.D., Plaintiff's ophthalmologist, documented stable visual acute with correction in the right eye and no vision in Plaintiff's left eye. (*Id.* at ¶ 2.) Dr. Fleckner documented Plaintiff's right eye vision as 20/20 in 2012; in January 2017, it was 20/40, in May 2017 and February 2018 it was 20/30- and in August 2018 it was 20/25-. (*Id.* at ¶ 3.) In August 2018, Plaintiff's glaucoma was controlled. (*Id.*) On February 25, 2019, Richard Sturm, M.D., an ophthalmologist, saw Plaintiff for ocular

---

[1] The alleged onset date was amended to September 1, 1992, when Plaintiff turned 18. (*Id.*) The relevant time period for Plaintiff's Title II claim is September 1, 1992, to September 1, 1996. (*Id.*) For Title II purposes, the relevant time period is January 7, 2019, the application date, to February 9, 2021, the ALJ decision date. (*Id.*)

hypertension and fluctuating vision. (*Id*. at 6, ¶ 4.) Dr. Strum noted 20/25 right eye visual acuity

with correction. (*Id*.) Plaintiff presented to Gary Berman, M.D., on April 10, 2019 for a

consultative vision examination at the request of the agency. (*Id*. at ¶ 5.) Dr. Berman noted that

Plaintiff reported that he could cook, clean, do laundry, go shopping, and handle his personal

care. (*Id*.)

   Plaintiff's corrected vision for distance only acuity was 20/50 in his right eye. (*Id*.) He

was diagnosed with blindness in the left eye and glaucoma in the right, with a guarded prognosis.

(*Id*.) He was able to read without difficulty and maneuver around objects during the evaluation,

and his visual acuity and field testing were deemed consistent with his conditions. (*Id*.) During

an April 10, 2019, consultative examination ordered by the agency, Steven Samuels, MD noted

Plaintiff to be blind in the left eye with glaucoma in both eyes. (*Id*. at ¶ 6.) Plaintiff had a normal

gait without an assistive device but was unable to walk on his heels or toes without difficulty.

(*Id*.)  He could perform a full squat and rise from a chair without difficulty. (*Id*.) Plaintiff had full

range of motion in his spine and all extremities. (*Id*.) He also had full (5/5) motor strength in all

extremities with no sensory deficit. (*Id*.) He had slightly diminished grip strength bilaterally and

was unable to button or tie due to vision deficits. (*Id*.)

   Dr. Samuels rated Plaintiff's prognosis as guarded and opined that he should avoid

strenuous physical activity, operating a motor vehicle, and unprotected heights due to his history

of seizures. (*Id*. at 6-7, ¶ 7.)  He should also avoid activity requiring fine visual acuity. (*Id*.)

Plaintiff also attended a consultative psychiatric examination performed by Clementina Porcelli,

Ph.D., on the same date. (*Id*. at 7, ¶ 8.)  Plaintiff endorsed symptoms of dysphoric mood,

psychomotor retardation, fatigue, and lack of energy. (*Id*.) Dr. Porcelli noted that Plaintiff

indicated that he could handle his personal care and do light general cleaning, some laundry, and

shopping for simple purchases. (*Id*.) On mental status examination, Dr. Porcelli found that Plaintiff was cooperative, appropriately dressed, and fairly groomed. (*Id*.) His posture and motor behavior were normal, and his eye contact was appropriate. (*Id*.)  Plaintiff demonstrated coherent and goal-directed thought processes with no evidence of hallucinations, delusions, or paranoia. (*Id*.)

His concentration and attention appeared mildly impaired due to intellectual functioning and he was unable to subtract a series of sevens from 100. (*Id*.) His recent and remote memory skills were similarly impaired and he could not recall three objects after a few minutes delay. (*Id*.) His cognitive functioning was below average and his insight and judgment were rated "fair." (*Id*.) Dr. Porcelli diagnosed adjustment disorder with depressed mood and possible (rule out) learning disability with a fair to guarded prognosis. (*Id*.) Dr. Porcelli concluded that Plaintiff may need assistance to manage his own funds due to limited cognitive abilities. (*Id*. at ¶ 9.) Dr. Porcelli opined that Plaintiff had no limitation in his ability to understand, remember, and apply simple direction and instruction; use reason and judgment to make work-related decisions; sustain an ordinary routine and regular attendance at work; maintain personal hygiene or appropriate attire; and have awareness of normal hazards and take appropriate precautions. (*Id*. at 7-8, ¶ 9.)

She further opined that he had moderate limitations in understanding, remembering, and applying complex direction and instruction; interacting adequately with supervisors, coworkers, and the public; sustaining concentration and performing a task at a consistent pace; and regulating emotion, controlling behavior, and maintaining well-being. (*Id*.) His limitations were determined to be the result of his cognitive deficits and depression, and they may significantly interfere with his ability to function on a daily basis. (*Id*.) On April 30, 2019, E. Selesner, a state

agency psychological consultant, reviewed the record and opined that Plaintiff had not established a medically determinable mental impairment between September 1, 1992, and September 1, 1996. (*Id*. at 8, ¶ 10.) After that date, Plaintiff's records demonstrated that he was limited to unskilled work with simple tasks. (*Id*.)

State agency consultants, C. Li, M.D., and C. Levit, M.D., both reviewed Plaintiff's medical records and concluded that he could perform light work with occasional gross manipulation and no fine visual acuity. (*Id*. at ¶ 11.) Another ophthalmologic evaluation was performed on July 29, 2019 by Robert Auerbach, M.D., at the agency's request. (*Id*. at ¶ 12.) Again, he had no light perception in the left eye and deficits in the right. (*Id*.)  His vision in the right eye was 20/30 at near with his current glasses. (*Id*.) Plaintiff was diagnosed with no vision in the left eye and glaucoma, myopia, astigmatism, and presbyopia of the right eye. (*Id*.) With proper compensation he appeared to have relatively good function and field in his one working eye. (*Id*.) Dr. Porcelli performed a second psychiatric evaluation on August 2, 2019, during which her findings and opinion remained unchanged. (*Id*. at 9, ¶ 13.)

At a consultative examination on August 2, 2019, Syeda Asad, M.D. found that Plaintiff had a normal gait, could walk on toes and heels without difficulty, and could perform a full squat. (*Id*. at ¶ 14.) He also had full range of motion in his spine and extremities, full (5/5) motor strength, intact hand and finger dexterity, and full (5/5) grip strength bilaterally. (*Id*.) Dr. Asad opined that Plaintiff has mild to moderate limitations for squatting, kneeling, bending, walking, and standing for a long period of time, as well as marked limitations for activities requiring fine visual acuity. (*Id*.) Plaintiff underwent a neuropsychiatric evaluation on August 21, 2019, at the request of his neurologist. (*Id*. at ¶ 15.) Kevin M. Kenney, Ph.D., observed Plaintiff's mild-to-moderate fine motor deficits, difficulty with heel to toe walking and inability to put notched pegs

into a board. (*Id.*) Dr. Kenny also noted that Plaintiff did not complain of visual difficulties during testing, and he appeared to adequately scan visual stimuli to the left visual field. (*Id.*)

His conversation was moderately restricted and somewhat awkward, and he withdrew effort at times during testing. (*Id.*) His inconsistent attention was evinced by getting some easier questions wrong and harder questions correct. (*Id.*) Plaintiff struggled on tasks that were nonverbal and required visual acuity or fine motor dexterity, such as writing, organizing puzzle pieces, and manipulating blocks or pegs. (*Id.*) He scored below average in perceptual reasoning representing a functional impairment secondary to visual deficits as well as clear perceptual-motor deficits that were apparent throughout the examination. (*Id.*) His social, adaptive, and cognitive functioning were all in the low average range. (*Id.*) Plaintiff often needed questions repeated and appeared to have difficulty organizing his thoughts. (*Id.* at 9-10, ¶ 15.) His functioning declined when motor or perceptual tasks were involved and his performance became more disorganized as items became more challenging. (*Id.*) His abstract reasoning was significantly weak and he exhibited deficits in executive functioning and processing speed, becoming easily overwhelmed and unable to retain additional information. (*Id.*)

Dr. Kenney specified that Plaintiff cannot manage his own finances because of his deficits in math and he has serious limitations in maintaining attention, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without distraction, completing a normal workday or week without interruption, and accepting instruction and responding appropriately to supervision or changes in a work setting. (*Id.* at ¶ 16.) Plaintiff would be unable to meet competitive standards in the ability to make simple work-related decisions, perform at a consistent pace, and travel in unfamiliar places. (*Id.*) Dr. Kenny explained that Plaintiff's inconsistent performance during cognitive testing is due to his variable

attention as well as significant visual and perceptual issues. (*Id*.) Dr. Fleckner, Plaintiff's treating vision specialist, submitted a letter on September 27, 2019, wherein he explained that Plaintiff has no vision in his left eye, and that his right eye has retinal wrinkling causing intermittent blurriness. (*Id*. at ¶ 17.) Dr. Fleckner indicated that Plaintiff has difficulty with balance and depth perception, resulting in problems driving, navigating stairs, and operating machines. (*Id*.) He is closely followed every six months to monitor the functioning in his only working eye. (*Id*.)

### C.    *Relevant Non-Medical Evidence*

In 1992, Plaintiff underwent a vocational assessment performed by Kim Lorah at the request of the national center for disability services. (*Id*. at 11, ¶ 1.) Plaintiff had very strong verbal abilities, but below-grade abilities in math. (*Id*.) He had superior ratings in computing payroll and keeping records, which involved charting data, using math, and an adding machine. (*Id*.) He was able to follow multi-step instructions. (*Id*.) He was found to have the ability but not the speed to scan written material and compare written information and on stamping and sorting tasks his timing was below average and his productivity consistently slow. (*Id*.) His productivity ranged between thirty-four and thirty-six percent of that of an average worker. (*Id*.) He earned low scores in logical thinking because he could not sufficiently integrate information presented by chart or paragraph form, and his scores were low in abstract, mechanical, and spatial reasoning. (*Id*.)

He was assessed to have weaknesses in visual motor skills, following written directions, concentration, and persisting with work that is boring or difficult. (*Id*.) His clerical abilities were superior when untimed, but three, ten, and twenty percent of normal when timed. (*Id*.) His mail sorting abilities were superior both in quality and time; his recordkeeping skills were superior in time and above average in quality; his payroll computation was superior in time and average in

quality; and his business math was average in time and quality. (*Id*.) Ms. Lorah found that Plaintiff's verbal and mathematical skills were functional for use in the work force, and he could follow directions and work on simple multi-step tasks independently. (*Id*.) However, Plaintiff's productivity rate ranged between thirty-four to thirty eight percent of the average work pace of others. (*Id*.)

There was a discrepancy between his performance on timed versus untimed clerical work samples and aptitude tests. (*Id*. at 11-12, ¶ 1.) He compared/copied information and used tables better than 99% of his peers when untimed, but dropped into the third, tenth, and twentieth percentiles when performing the same tasks with the addition of a time constraint. (*Id*.) Plaintiff's aptitude testing fell from the 95-99th percentile when untimed, to the 1-5th percentile when timed. (*Id*.) Ms. Lorah recommended that he participate in a work adjustment program to improve his productivity level and raise his ability to resolve conflict and accept supervision. (*Id*.) Plaintiff's second cousin completed a Function Report for him in which she explained that Plaintiff lived alone in a house. (*Id*. at 12, ¶ 2.) He handled his personal care without problems. (*Id*.) He was able to do laundry, wash dishes, vacuum, take out the garbage, go grocery shopping, and prepare simple meals. (*Id*.) He needed assistance with cutting his nails, bandaging cuts, changing the bag in the vacuum cleaner, cutting food and assembling things. (*Id*.)

He watched television, did light reading, and took a walk every day. (*Id*.) His cousin and aunt have to remind him to do chores from time to time, he daydreams and loses focus, and he has difficulty completing more complicated or difficult tasks. (*Id*.) She indicated that Plaintiff has problems with balance, depth perception, and visual motor coordination. (*Id*.) He also has short term memory issues and changes from his strict schedule make him uneasy. (*Id*.) Another function report, completed by Plaintiff on July 1, 2019, indicates that he is capable of personal

care, preparing simple meals, doing light chores, shopping, reading, and watching television. (*Id*. at ¶ 3.) During the administrative hearing Plaintiff testified he has to be very close to the TV or anything he is trying to read. (*Id*. at 12-13, ¶ 4.) He read newspapers, magazines, books, and almanacs. (*Id*. at 13, ¶ 4.)  He spent about eight hours a day watching television. (*Id*.) He also has trouble seeing far away. (*Id*.) He has difficulty using zippers and ties and sometimes has difficulty with buttons. (*Id*.) A vocational expert testified that if an individual could not perform at a consistent pace similar to that of other workers, he would not be able to maintain any of the jobs she identified. (*Id*. at ¶ 5.)

## II.    *Procedural History*

Plaintiff commenced the instant action on October 27, 2021, seeking this Court's review of the decision of the Commissioner, pursuant to Section 205(g) and/or Section 1631 of the Act. (ECF No. 1.) Plaintiff asserted that the ALJ's Decision denying his application for disability benefits was "not supported by substantial evidence" and "contrary to law and regulation." (*Id*. at ¶ 8.) On May 30, 2023, the parties consented to the undersigned's jurisdiction for all purposes, and the case was reassigned to the undersigned on May 31, 2023. (*See* ECF Nos. 15, 16.) On September 6, 2023, Plaintiff filed his Motion for Judgment on the Pleadings (ECF No. 18), and, that same day, the Commissioner filed a Cross-Motion to Remand the case for further administrative proceedings (ECF No. 24).

## III.    *The Parties' Contentions*

### A.    *Plaintiff's Motion for Judgment on the Pleadings*

In support of his Motion for Judgment on the Pleadings, Plaintiff argues: (i) the ALJ's conclusion that Plaintiff can perform work that requires frequent fine visual acuity and frequent handling and fingering is the product of a legally erroneous evaluation of the opinion evidence

and is unsupported by any medical evidence, (ii) the ALJ's RFC is legally erroneous in that it does not account for Plaintiff's undisputed limitations in concentrating, persisting, and maintaining pace, and (iii) the existing record supports a finding of disability. (*See* generally, ECF No. 18-2.)

*First*, Plaintiff identifies that Dr. Levits and Dr. Li found that Plaintiff could perform light exertion work with occasional posturals and occasional manipulation, but which does not involve fine visual acuity, and the ALJ found their opinions "somewhat persuasive," but rejected the visual limitation as an overstatement – which was inconsistent with the opinions of Dr.s Berman, Auerbach, and Fleckner. (*Id*. at 1.) Plaintiff contends the ALJ did not explain how he came to the conclusion that the limitation was inconsistent with other medical opinions. (*Id*.) Specifically, Plaintiff argues none of the three doctors the ALJ refers to actually provided any opinion as to Plaintiff's capacity for work requiring fine visual acuity:

> Dr. Berman diagnosed left eye blindness and glaucoma in the right eye, rated Plaintiff's prognosis "poor," and merely stated that his visual acuity and vision field results were consistent with his medical conditions. Dr. Auerbach diagnosed blindness in the left eye and presbyopia in the right eye, a diagnosis which refers to the loss of ability to focus on nearby objects. Dr. Fleckner noted Plaintiff had only one functioning eye which is plagued by retinal wrinkling that blurs his vision, and that his deficits in balance and depth perception cause him to have difficulty managing stairs, driving, and operating machinery.

(*Id*. at 1-2.)

Plaintiff claims that "[e]ven the ALJ himself explicitly found that Plaintiff does indeed suffer from the severe impairment of presbyopia, a finding which conflicts with his later claim that Plaintiff is capable of frequently utilizing fine visual acuity and with his evaluation of Dr. Li's opinion" and the ALJ "did not explain how any of this is inconsistent with an inability to perform work involving fine visual acuity" "[n]or did the ALJ consider the opinions which were plainly consistent with that limitation." (*Id.* at 2.) Specifically:

Dr. Samuels found that Plaintiff must avoid activities requiring fine visual acuity, and Dr. Asad concluded that Plaintiff has marked limitations in performing activities which require fine visual acuity. During cognitive testing, Dr. Kenney noted that Plaintiff's performance declined on tasks involving visual perception or acuity, and that his visual and perceptual deficits would significantly impact his potential for employment.

(*Id*.)

Plaintiff further argues the ALJ's conclusion that Plaintiff can frequently handle and finger is contradicted by the evidence he found persuasive. (*Id*.) Drs. Li and Levit both limited Plaintiff to occasional manipulation, and, in evaluating that opinion and finding it to be "somewhat persuasive," Plaintiff claims "the ALJ only expressed disagreement with the visual limitation, taking no issue with the limitation to occasional manipulation" when, in fact, "[t]he record shows that Plaintiff performed severely below average in all areas of motor skill testing" and Dr. Kinney observed that Plaintiff has fine motor deficits demonstrated by the inability to place notched pegs into a board and difficulty with other fine motor dexterity tasks such as writing and organizing puzzles. (*Id*.)

*Second*, Plaintiff argues the ALJ's RFC is legally erroneous because it does not account for Plaintiff's "undisputed limitations in concentrating, persisting, and maintaining pace." (*Id*. at 3.) Plaintiff identifies that Dr. Porcelli's opinion – which the ALJ found persuasive – indicates that Plaintiff has limitations in sustaining concentration and in performing a task at a consistent pace. (*Id*.) Additionally, Dr. Kinney also observed that Plaintiff's attention and task performance are variable and that he has deficits in executive functioning and processing speed, opining that Plaintiff could not perform at a consistent pace sufficiently to meet competitive standards. (*Id*.) Plaintiff contends both opinions are "further supported by the results of a vocational evaluation during which Plaintiff's performance considerably declined when the tasks were timed; his timing was 'slow' and his productivity below average at a mere 34-36% of an average worker[,]" after which "[i]t was determined that his productivity deficits would negatively impact his ability

13

to perform a job." (*Id*.) Plaintiff maintains the ALJ did not contest that Plaintiff has "moderate limitations in all four broad areas of mental functioning, including in concentrating, persisting, and maintaining pace." (*Id*.)

*Third*, Plaintiff argues that the existing record supports a finding of disability. (*Id*.) Plaintiff identifies the parties agree that remand is necessary in this case, but disagree over the nature of that remand: Plaintiff contends that further proceedings are not necessary to determine that manipulative limitations are warranted, as the ALJ already found opinions stating as much to be persuasive, and are not otherwise necessary to ascertain the impact of the omitted limitation, since the vocational expert already testified that none of the jobs the ALJ relied on at Step 5 could be performed with occasional handling and fingering. (*Id*.) Plaintiff further identifies the ALJ implicitly conceded Plaintiff's presbyopia (inability to focus on nearby objects) and there is no evidence to refute the unanimous medical opinions that this prevents him from performing work requiring fine visual acuity. (*Id*.)

Plaintiff maintains the reliable job information of which the ALJ takes administrative notice, "establishes that fine visual acuity is required for each of the occupations the ALJ relied on at Step 5." (*Id*. at 3-4.) Plaintiff argues the ALJ already found evidence indicating Plaintiff's inability to keep up pace consistent with an average worker to be persuasive, and further proceedings are not necessary to understand that – as vocational expert testimony has already confirmed – the inclusion of that limitation in the RFC eliminates all work. (*Id*. at 4.) In sum, once the "ALJ's errors are corrected, and any one of the impermissibly omitted limitations is included in the RFC," Plaintiff concludes he must be found disabled. (*Id*.)

**B.** ***Defendant's Cross-Motion to Remand***

In support of its Cross Motion to Remand, Defendant argues: (i) remand for additional

14

fact finding is required regarding Plaintiff's visual acuity and manipulative limitations, (ii) substantial evidence supports the ALJ's assessment of Plaintiff's mental impairments, and (iii) remand is necessary for further administrative proceedings and not payment of benefits because the existing record does not support a finding of disability. (*See generally*, ECF No. 18-5.) *First*, Defendant argues that, with respect to Plaintiff's visual acuity, Drs. Li and Levit found insufficient medical evidence prior to September 1, 1996, the relevant period for Plaintiff's Title II application where he had to prove he was disabled prior to age 22, and, for the relevant Title XVI period (January 7, 2019 to February 9, 2021),[2] Drs. Li and Levit also opined that Plaintiff could perform a range of light work with occasional handling and not requiring fine visual acuity. (*Id*. at 1.)

Defendant identifies the ALJ found Dr. Li's opinion somewhat persuasive, but inconsistent with Plaintiff's daily activities and "medical opinions." (*Id*.) Defendant notes Plaintiff's daily activities included reading, watching television, doing crossword puzzles, cooking, cleaning, and shopping, "[a]ll of [which] require fine visual acuity[,]" and, "[w]hile there are not contrary 'medical opinions,' the clinical findings provided support for the ALJ's RFC finding." (*Id*. at 2.) Specifically, Defendant argues: (i) Dr. Auerbach noted that Plaintiff had good visual field and relatively good visual function, (ii) Drs. Berman and Auerbach found 20/50 right eye visual acuity with correction, (iii) Dr. Berman commented that Plaintiff could maneuver around objects and read without difficulty, (iv) Dr. Sturm noted 20/25 right eye acuity with correction in September 2018, and (v) Dr. Fleckner observed varying right eye visual acuity: 20/20, 20/25, 20/30, and 20/40. (*Id*. at 2.) Defendant further identifies the most recent eye examination in October 2020 showed 20/30 right eye visual acuity, however, Drs. Li

---

[2] Defendant contends the relevant time period for Plaintiff's Title II case was September 1, 1992, to September 1, 1996. (*Id*. at 1.) For his SSI claim, Defendant contends the relevant period was January 7, 2021 to February 9, 2021. (*Id*.)

and Levit did not have access to the most recent eye examinations. (*Id*.)

With respect to manipulative limitations, Defendant argues the ALJ did not specifically address Dr. Li's proposed manipulative limitations due to his vision (occasional handling). (*Id*.) As such, Defendant maintains remand is necessary to "resolve the conflict between the prior administrative medical findings and the ALJ's RFC that contains no manipulative limitations." (*Id*.) Defendant clarified that "[w]hile remand is necessary for further fact finding, the record does not overwhelmingly support greater manipulative limitations than found by the ALJ." (*Id*.) Specifically, Defendant identifies that Dr. Asad noted that Plaintiff retained intact hand and finger dexterity and full grip strength, and found no manipulative limitations. (*Id*.)

Further, Defendant argues "based on the vocational expert's testimony, a limitation to occasional handling would not support a finding of disability." (*Id*.) Specifically, Defendant identifies the vocational expert testified that while jobs as a photocopying machine operator and a routing clerk are described as having frequent handling and fingering, the tasks could be split between the two hands so that neither required more than occasional handling and fingering. (*Id*.) Even assuming Plaintiff's argument that the ALJ improperly omitted greater visual and manipulative limitations, Defendant maintains remand would be necessary to obtain additional vocational expert testimony regarding the potential impact of the additional limitations, and, "[u]nder these circumstances, remand for calculation of benefits would be inappropriate." (*Id*. at 2-3.)

*Second*, Defendant argues substantial evidence supports the ALJ's assessment of Plaintiff's mental impairments. (*Id*. at 3.) Defendant contends that Dr. Porcelli opined: (i) that Plaintiff had no limitations in performing simple directions and instructions, using reason and judgment to make work-related decisions, and sustaining an ordinary routine or regular attendance at work, and (ii) that Plaintiff had moderate limitations performing complex

16

directions and instructions, interacting adequately with others, sustaining concentration and performing a task at a consistent pace, regulating his emotions, controlling his behavior, and maintaining his well-being. (*Id.*) Defendant claims Dr. Porcelli's opinion is consistent with the ALJ's finding that Plaintiff could perform simple work tasks with only occasional decision-making and occasional interaction with others. (*Id.*) However, if the Court finds Dr. Porcelli's opinion inconsistent with the RFC, Defendant maintains "remand would be necessary for the ALJ to state whether the opinion was found persuasive." (*Id.*)

Defendant further claims that in March 2020, after one neuropsychological evaluation in August 2019, Kevin Kenney, Ph.D., opined that Plaintiff was unable to meet the competitive standards for making simple work-related decisions, performing at a consistent pace, and traveling in unfamiliar places and he had serious limitations in maintaining attention for two-hour segments, sustaining an ordinary routine, working in coordination with or proximity to others, completing a normal workday and workweek, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in a routine work setting, and being aware of normal hazards and taking appropriate precautions, however, the ALJ found this opinion unpersuasive because the proposed marked limitations were not supported by Dr. Kenney's diagnosis of a "mild cognitive impairment" and assigned GAF score of 70, evidencing only mild mental symptoms. (*Id.* at 3-4.) The ALJ also found Dr. Kenney's opinion inconsistent with the record as a whole, including Dr. Porcelli's opinion and Dr. Selesner's findings. (*Id.*)

Defendant argues the ALJ's RFC finding is supported by the prior administrative findings:

> In April 2019, Dr. Selesner reviewed the record and found that the record was insufficient to establish a medically determinable psychiatric impairment prior to Plaintiff turning age 22. Dr. Selesner opined that Plaintiff could, currently, adequately sustain attention and respond to changes in the work setting and perform simple tasks. In August 2019, Dr.

Shapiro also found no medically determinable mental impairment prior to Plaintiff turning age 22. For Plaintiff's current ability, Dr. Shapiro opined that Plaintiff could adequately sustain attention and respond to changes in the work setting and could perform simple tasks. The ALJ found Dr. Selesner's prior administrative findings mostly persuasive as they were supported by a detailed rationale.

(*Id*. at 4.)

Defendant additionally argues the ALJ also found the findings mostly consistent with the record as a whole including Dr. Porcelli's opinions, though the ALJ found that Plaintiff had moderate limitations in social functioning, which still "jibe with unskilled work as assessed by the vocational expert and, thus, the ALJ." (*Id*.) Defendant identifies "[c]onsistent with the prior administrative findings, the ALJ found that Plaintiff could perform simple tasks with occasional decision making." (*Id*.)

Defendant further identifies that during a 1992 vocational evaluation, at the age of 17, Plaintiff demonstrated the ability to perform simple multi-step tasks, but his productivity level was consistently slow. (*Id*.) Plaintiff demonstrated a high quality of work but worked at a slow pace, and, as a result, a work adjustment program was recommended to improve Plaintiff's Productivity, and Plaintiff subsequently worked until the company went out of business. (*Id*.) Defendant contends Plaintiff's ability to work after the evaluation "does not support the existence of a disabling mental impairment." (*Id*. at 4-5.)

*Third*, remand is necessary for further administrative proceeding – and not payment of benefits – because the existing record does not support a finding of disability. (*Id*. at 5.) Defendant argues the ALJ did not specifically address Dr. Li's proposed manipulative limitations (occasional handling) caused by Plaintiff's vision and inability to button or tie and, therefore, "remand is necessary to resolve the conflict between the prior administrative medical findings and the RFC." (*Id*.) While Defendant maintains remand is necessary for further fact finding, Defendant contends the record does not overwhelmingly support greater manipulative limitations

18

than found by the ALJ, and based on the vocational expert's testimony, a limitation to occasional

handling would not support a finding of disability. (*Id.*) Defendant argues the vocational expert

testified that while jobs of a photocopying machine operator and a routing clerk are described as

having frequent handling and fingering, the tasks could be split between the two hands so that

neither required more than occasional handling and fingering. (*Id.*)

Defendant contends the evidence did not establish that Plaintiff could not perform work

that required frequent fine visual acuity without depth perception, as included in the RFC

finding:

> Doctors Berman, Auerbach, and Fleckner made clinical findings that support a
> determination that Plaintiff could perform frequent fine visual acuity. Dr. Auerbach noted
> that Plaintiff had good visual field and relatively good visual function. Drs. Berman and
> Auerbach found 20/50 right eye visual acuity with correction; Dr. Berman commented
> that Plaintiff could maneuver around objects and read without difficulty. Dr. Sturm noted
> 20/25 right eye acuity with correction. Dr. Fleckner observed right eye visual acuity of
> 20/20, 20/25, 20/30, and 20/40.
>
> The most recent eye examination in October 2020 showed 20/30 right eye visual acuity.
> Drs. Li and Levit did not have access to the most recent eye examinations. As such, while
> Drs. Berman, Auerbach, and Fleckner did not provide medical opinions, their clinical
> findings supported the ALJ's determination that Dr. Li's proposed extreme visual
> limitation (no fine visual acuity) was inconsistent with the record. Further, Plaintiff's
> reported daily activities included reading, watching television, cooking, cleaning,
> crossword puzzles, and shopping. All of these activities require fine visual acuity.

(*Id.* at 5-6.) Defendant further contends the ALJ did not make two key factual findings: (i) the

ALJ expressly did not find that Plaintiff had an inability to maintain pace

consistent with the average worker; in fact, the ALJ did not make a finding with regard to

Plaintiff's ability to maintain concentration, persistence, or pace, and (ii) the ALJ also

did not indicate whether he found Dr. Procelli's opinion regarding moderate limitations in

Plaintiff's ability to sustain concentration and perform a task at a consistent pace persuasive. (*Id.*

at 6.)

19

While Defendant argues that further fact finding is warranted for the ALJ to assess the persuasiveness of Dr. Porcelli's opinion on Plaintiff's concentration and pace abilities, and for the ALJ to make a finding as to whether Plaintiff has a limitation in this functional area, Defendant maintains that "even moderate limitations in mental work-related functioning do not significantly limit, and thus prevent, a claimant from performing unskilled work as Plaintiff was found capable of here" and, therefore, a remand for a calculation of benefits is not warranted; rather, a remand for further administrative proceedings is. (*Id*.)

**C.**    ***Plaintiff's Response in Opposition to Defendants' Cross-Motion to Remand***

In his Response in Opposition to Defendant's Cross-Motion to Remand, Plaintiff argues: (i) remand for calculation of benefits is proper because the evidence can only support limitations in visual acuity and manipulative limitations, (ii) remand for calculation of benefits is proper because the evidence can only support limitations in concentrating, persisting, and maintaining pace, and (iii) all relevant vocational testimony is already in the record. (*See generally*, ECF No. 18-6.)

*First*, Plaintiff argues that further administrative proceedings are not necessary in this case. (*Id.* at 2.) Plaintiff contends there is no need for additional fact finding to determine whether manipulative limitations are warranted as the ALJ has not contested Plaintiff's need for manipulative limitations. (*Id*.) Specifically, Plaintiff argues the ALJ found the opinion of Dr. Li to be persuasive, without explicitly mentioning any limitation except for the one he found unpersuasive: the assessed inability to perform work with visual limitations. (*Id*.) Plaintiff identifies the ALJ never disputed Dr. Li's opined manipulative limitations and never pointed to any evidence which he claimed to find inconsistent with such a limitation. (*Id*.)  Plaintiff maintains the evidence "overwhelmingly proves" Plaintiff's deficits in manual dexterity. (*Id*.)

Plaintiff further rebuts Defendant's contention that limitation to occasional handling and

fingering would permit other jobs, just not those identified by the ALJ. (*Id*.) Plaintiff argues that while the vocational expert testified that Plaintiff "should be able to" perform work as a photocopy machine operator and router, the ALJ did not find that Plaintiff could perform either of these jobs, and the vocational expert testified that none of the jobs the ALJ did find at Step 5 could be performed with occasional handling and fingering. (*Id*. at 3.) Plaintiff emphasizes that it has been established that "'the jobs of routing clerk and photocopy machine operator require 'frequent' handling and fingering." (*Id*.) (quoting *Welch v. Comm'r of Soc. Sec*., No. 17-CV-6764 (JS), 2019 WL 4279269, at *2 (E.D.N.Y. Sept. 10, 2019)). Plaintiff argues the ALJ additionally "rejected the medically assessed visual acuity limitations after declaring them inconsistent with opinions of medical sources who never issued an opinion on the matter" and "declined to mention that every single medical source that did address Plaintiff's visual capacity came to the same conclusion: that he can not perform work requiring fine visual acuity." (*Id*.)

Plaintiff maintains the ALJ himself has "already conceded that Plaintiff has the severe impairment of presbyopia, thereby acknowledging that Plaintiff has an inability to focus on nearby objects[,]" and, "[d]espite Defendant's attempts to frame the issue differently, the reason this case warrants a remand for a calculation of benefits is not because of the evidence the ALJ rejected, but that which he already conceded and inexplicably neglected to account for." (*Id*. at 4.) Plaintiff argues there is no conflict in the evidence in this case, there is only conflict between the conditions and limiting effects that the ALJ found supported by the record, and his contrary finding that the disabling limitations did not need to be included in Plaintiff's RFC. (*Id*.)

Plaintiff argues the Dictionary of Occupational Titles (the "DOT") and the Selected Characteristics of Occupations ("SCO") make clear that each of the jobs cited at Step 5 require fine/near visual acuity, an ability which the ALJ, "notwithstanding his attempt to discredit the medical sources, had already admitted Plaintiff does not have." (*Id*.) Plaintiff argues "[t]here is

21

no evidence to the contrary," and, according to Plaintiff "even Defendant had to admit that the inconsistency the ALJ alleged between medical opinions simply does not exist." (*Id.*) Overall, Plaintiff conetends there is no evidence to contradict the opined limitations, and the only jobs Plaintiff was found capable of performing are precluded when those limitations are properly made part of the RFC. (*Id.*)

*Second*, Plaintiff rebuts Defendant's contention that Dr. Porcelli's opinion is consistent with the ALJ's RFC. (*Id.*) Plaintiff identifies that Dr. Porcelli's opinion, "like that of every other medical source," indicates that Plaintiff has significant deficiencies in motor skills and vision, both of which are expected to make meaningful employment difficult to achieve[,]" which is "obviously not reflected in the ALJ's RFC." (*Id.* at 5.) With respect to Plaintiff's mental/cognitive limitations, Plaintiff maintains the ALJ's RFC is still incompatible with the opinion he claimed to find persuasive:

> Dr. Porcelli, like every other examining medical professional, found Plaintiff to have limitation in concentrating and maintaining a consistent pace. Indeed, the ALJ found moderate limitations in this area as well. The issue, however, is that nothing in the RFC accounts for those limitations. The ALJ assessed a limitation to simple work tasks, warranted by the overwhelming medical opinion support for a limited ability to deal with complex tasks; he limited Plaintiff to only occasional decision making, addressing limitations in adaptation; and restricted him to occasional social contact, consistent with Plaintiff's undisputed social deficits. Notably, none of these functional restrictions address Plaintiff's limited ability to work at a consistent pace.

(*Id.*) Plaintiff further identifies the ALJ explicitly stated that Dr. Porcelli's opinion was "'persuasive,' and explained the basis for that finding, and, therefore, the ALJ has already made his finding clear, he just failed to include corresponding limitation in Plaintiff's RFC." (*Id.*)

Plaintiff reiterates that the ALJ has found Dr. Porcelli's opinion persuasive, and vocational expert testimony has already confirmed that if, as Dr. Porcelli observed, Plaintiff were unable to keep up at a consistent pace in a work environment, he could not maintain employment. (*Id.* at 6.) Therefore, "once the ALJ's errors are corrected," Plaintiff argues "the

record can only support a finding of disability[,]" and, in "such a case, remand for calculation of benefits is appropriate." (*Id*.)

*Third*, Plaintiff argues that all relevant vocational testimony is already in the record, such that a remand for further proceedings is unnecessary. (*Id*. at 6.) Plaintiff emphasizes that the ALJ "has already detailed how persuasive each medical opinion was found and heard vocational testimony about the impact of various limitations on the occupational base[,]" and "[t]he record already contains testimony about the impact of Plaintiff's limitations in maintaining consistent pace, which would render the other two issues moot." (*Id*.) In any event, Plaintiff argues "the DOT is clear about the impact of his visual and manipulative limitations[:]" "'ALJ's look to vocational experts to resolve complicated issues like transferability, not to merely reference a publicly available description of the basic requirements for each job." (*Id*.) In sum, Plaintiff maintains "[t]here is no further development necessary in this case; the only conflict here is between the ALJ's findings and his conclusion that those findings cannot properly support." (*Id*. at 7.)

## DISCUSSION

### I.    *Legal Framework*

When determining if the Social Security Administration's denial of disability benefits was warranted, the court will review *de novo* "whether the correct legal principles were applied and whether substantial evidence supports the decision." *Balotti v. Comm'r of Soc. Sec.*, 605 F. Supp. 3d 610, 613 (3d Cir. 2022) (quoting *Butts v. Barnhard*, 388 F.3d 377, 384 (2d Cir. 2004)). Here, the correct legal principles are the five-step inquiry described as the "Social Security Disability Standard" outlined below. "If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must 'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support

the Commissioner's decision.'" *Balotti*, *605* F. Supp. 3d at 613 (quoting *Brault v. Soc. Sec. Admin'n Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam)).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Cardin v. Comm'r of Soc. Sec.*, No. 23-755, 2024 WL 2180216, at *1 (2d Cir. May 15, 2024) (citing *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)) ("The substantial evidence standard requires that we accept the agency's factual findings unless a reasonable factfinder would be compelled to conclude otherwise."). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record,  including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1984) (per curiam)).

As such, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." *State of New York ex rel.  Bodnar v. Sec. of Health and Human Servs.*, 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision must be supported by "adequate findings . . . having rational probative force." *Veino v.  Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see also Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (under the substantial evidence standard of review, the plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record, rather than merely disagree with the ALJ's weighing of the evidence or argue that evidence in the record could support his or her position).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Thus, an individual must be found disabled when his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A). The correct legal principle that ALJs must undertake to ascertain a claimant's status is the sequential five-step inquiry of the Social Security Disability Standard outlined by the Commissioner's regulations. *See* 20 C.F.R. §§ 404.1520, 416.920. According to this framework, a claimant will be found disabled if the Commissioner determines:

> (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find his disabled if (5) there is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)).

At step one, the Plaintiff must prove s/he is not employed in "substantial gainful activity" ("SGA").   "[SGA] is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "'Substantial work activity' is work activity that involves doing significant physical or mental activities." (*Id.* § 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, "whether or not a profit is realized." (*Id.* § 404.1572(b)).

At step two, the Plaintiff must prove s/he is significantly limited in his/her physical or mental abilities to perform basic work activities. "Basic work activities" are "activities and

aptitudes necessary to do most jobs." *Sharmara A. v. Comm'r of Soc. Sec.*, No. 23-CV-6171 (LJV), 2023 U.S. Dist. LEXIS 230336, at *5 (W.D.N.Y. Dec. 28, 2023) (quoting 20 C.F.R. § 404.1522(b)).

At step three, Plaintiff must prove that the impairments meet or are equivalent to one of the impairments listed in 20 C.F.R. 404 to render her as "disabled." "If the severe impairments do not meet or equal a listed impairment, an administrative law judge assesses the social security claimant's residual function capacity based on all the relevant medical and other evidence in the case record." *McAllister v. Colvin*, 205 F. Supp. 3d 314, 327 (E.D.N.Y. 2016) (quoting 20 C.F.R. § 404.1520(e)). At step four, the plaintiff must prove that he is incapable of meeting the physical and mental demands of work; and if the ALJ failed to develop the record. At step five, the Commissioner bears the burden to demonstrate that "there is work in the national economy that the claimant can do" upon consideration of the plaintiff's RFC, age, education, and prior work experience, are there any other jobs Plaintiff could perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Pursuant to amended regulations, claims filed after March 27, 2017[3] will not apply a "presumption of controlling weight" to a treating doctor's opinion. *Balotti*, 605 F. Supp. 3d at 616. Instead, the revised regulations for evaluating a doctor's opinion evidence place substantial emphasis on two factors: supportability and consistency. *Id.*, *See* 20 C.F.R. § 404.1520 (a). To avoid legal error, "[a]n ALJ must not only apply supportability and consistency in evaluating medical source opinions but also must explain the analysis of these factors in the decision." *Balotti*, 605 F. Supp. 3d at 617; 20 C.F.R. § 404.1520 (c)(b)(2). The first factor of supportability

---

[3] Until March 27, 2017, regulations required application of the so-called "treating physician rule" pursuant to which the opinion of a claimant.s treating physician presumptively was entitled to "controlling weight." 20 C.F.R. § 404.1520 (c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

"refers to the extent to which a medical source's opinion is supported by objective medical evidence and the medical source's explanations." *Balotti*, 605 F. Supp. 3d at 616; 20 C.F.R. § 404.1520 (c)(1). A medical opinion is considered persuasive when it is more relevant to the objective medical evidence and the medical source's explanations. *See id.* The second element of consistency "refers to the extent to which a medical source's opinion is consistent with other medical or non-medical sources." *Id.* "[I]f two or more medical opinions or prior administrative medical findings are both equally well supported and consistent," the ALJ must consider other factors listed in 20 CFR 404.1520. *See* 20 C.F.R. § 404.1520. These factors are "Relationship with the claimant," "Extent of the treatment relationship," and "Examining relationship." *See id.* § 404.1520 (c)-(e).

The Court will not defer to the Commissioner's determination if it is a product of legal error resulting from inadequate application of supportability or consistency. *See Balotti*, 605 F. Supp. 3d, 613 (quoting *Dunston v. Colvin*, 14-CV-3859, 2015 U.S. Dist. LEXIS 438, 2015 WL 54169 at *4 (S.D.N.Y. Jan 5, 2015)). "After reviewing the Commissioner's determination, the district court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing.'" *Catsigiannis v. Astrue*, No. 08-CV-2177 ENV LB, 2013 WL 2445046, at *3 (E.D.N.Y. June 4, 2013) (quoting *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005)); *see also* 42 U.S.C. § 405(g).

"Remand for further development of the evidence is appropriate where there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Kirkland v. Astrue,* No. 06 CV 4861(ARR), 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008); *see also Butts,* 388 F.3d at 386 (internal citations omitted) ("Remand for additional proceedings is particularly

appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would ... plainly help to assure the proper disposition of a claim."). "On the other hand, when there is persuasive proof of disability in the record and no apparent basis to conclude that a more complete record might support the Commissioner's decision, further evidentiary development would not serve any purpose. In that case, the court should reverse the Commissioner's decision and remand solely for the calculation of benefits." *Kirkland*, No. 06 CV 4861(ARR), 2008 WL 267429, at *8 (internal citations omitted) (cleaned up).

## II.    ***Plaintiff's Motion for Judgment on the Pleadings***

As stated, Plaintiff seeks reversal of the ALJ's Decision on the grounds that the ALJ's RFC determination was "unsupported" and "legally erroneous." *See generally*, ECF No. 18-1. Pursuant to Social Security Ruling ("S.S.R.") 96-8p, an "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *See* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *See id.* When conducting a function-by-function analysis for the RFC, the ALJ must assess the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch. *Walters v. Astrue*, 11-CV-640 (VEB), 2013 U.S. Dist. LEXIS 20550, at *10 (N.D.N.Y. Feb. 15, 2013) (citing 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a)).[4]

---

[4] An ALJ is not required to perform a function-by-function analysis in *every circumstance*. So long as the ALJ provides "an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that an additional analysis would be unnecessary or superfluous." *Milliken v. Berryhill*, 1:16-CV-00297 EAW, 2017 U.S. Dist. LEXIS 118950, at *54 (W.D.N.Y. July 28, 2017) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). "Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* at *54-55.

This assessment is considered to discern the individual's ability to perform work-related activities, taking into account the person's limitations or restrictions. *Salati v. Saul*, 415 F. Supp. 3d 433, 451 (S.D.N.Y. 2019). In doing so, the ALJ must cite to and include medical opinion authority in the decision. *Morse v. Saul*, 19-CV-304-MJR, 2020 U.S. Dist. LEXIS 94494, at *11 (W.D.N.Y. May 29, 2020). Still, an ALJ must not put forth his own evaluations of the medical findings. *Id.* (erroneously giving limited weight to medical opinions and finding overwhelming support in non-opinion mental health evidence).

An ALJ is "required to consider all of the medical opinion evidence in the record." *Hahn v. Saul*, 20-CV-06124 (KAM), 2023 U.S. Dist. LEXIS 135215, at *11 (E.D.N.Y. Aug. 3, 2023) (citing § 404.1520(b)(c) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record.")). In *Hahn*, the court stated that the ALJ's failure to discuss and consider a doctor's assessment was grounds for remand. *Id.* at *11-12. Although the ALJ must consider all medical evidence in the record, the new regulations state that an ALJ must not defer or give any specific weight to a medical opinion or finding. *Ronald D. v. Comm'r of Soc. Sec.*, No. 2:20-cv-00197, 2021 U.S. Dist. LEXIS 247735, at *10 (D. Vt. Dec. 29, 2021).

Here, the Court finds the ALJ's RFC determination resulted from a "flawed evaluation of medical opinion evidence" such that remand is warranted. *See e.g., Kathleen M. v. Comm'r of Soc. Sec.*, No. 8:20-CV-1040 (TWD), 2022 WL 92467, at *9 (N.D.N.Y. Jan. 10, 2022) ("A flawed evaluation of medical opinion evidence also impacts the ALJ's assessment of a claimant's residual functional capacity."). As mentioned, in his decision, the ALJ determined Plaintiff had the RFC to perform a light work except:

> he can engage in frequent crouching, kneeling, handling, fingering. He can engage in activities that require frequent fine visual acuity, but none that require depth

perception. He must avoid concentrated exposure to workplace hazards and he cannot operate a motor vehicle. He can perform simple work tasks only, with only occasional decision-making, and occasional interaction with supervisors, coworkers, and the general-public.

*See* ECF No. 13 at 28-29.

In reaching this determination, the ALJ cited the opinion of Dr. Li, a a state agency non-examining medical evaluator, who determined that Plaintiff's RFC is for "less than a full rage of light work with an inability to perform jobs that require fine visual acuity." *Id.* at 37. While the ALJ found Dr. Li's opinion "somewhat persuasive," and noted that Dr. Li's opinion is based on a review of the record as it stood at the time and "is consistent with the record as a whole as far as the [Plaintiff's] exertional limitations[,]" the ALJ ultimately found Dr. Li's opinion "overstates [Plaintiff's] visual limitations" and, "[h]is opinion in this regard is inconsistent with the opinions of Dr. Berman, Dr. Auerbach, and Dr. Fleckner, who are specialists in the field of ophthalmology who actually examined the [Plaintiff]." *Id.*

However, none of the three doctors the ALJ refers to (*i.e.*, Dr. Berman, Dr. Auerbach, and Dr. Fleckner) actually provided any opinion as to Plaintiff's capacity for work requiring fine visual acuity:

> Dr. Berman diagnosed left eye blindness and glaucoma in the right eye, rated Plaintiff's prognosis "poor," and merely stated that his visual acuity and vision field results were consistent with his medical conditions. Dr. Fleckner never opined about Plaintiffs capacity for work, much less his capacity to work on tasks requiring fine visual acuity, when he submitted a letter explaining Plaintiff's conditions. Rather, he noted Plaintiff had only one functioning eye which is plagued by retinal wrinkling that blurs his vision, and that his deficits in balance and depth perception cause him to have difficulty managing stairs, driving, and operating machinery.

> Finally, Dr. Auerbach never opined about Plaintiff's functional limitations either, and his opinion in no way supports the ALJ's conclusion that Plaintiff is capable of work with fine visual acuity. On the contrary, he diagnosed blindness in the left eye and presbyopia in the right eye, a diagnosis which refers to the loss of ability to focus on nearby objects.

*See* ECF No. 18-1 at 15-16. To this end, the ALJ: (i) failed to demonstrate any inconsistency

between the three doctor's findings regarding Plaintiff's visual acuity and Dr. Li's opined

limitation, and (ii) failed to "assess the consistency of Dr. Li's opinion with that of the

medical sources who actually *did* specifically opine on Plaintiff's capacity for fine visual

acuity." *Id*. at 16-17 (emphasis in original) (noting that Dr. Samuels found that Plaintiff must

avoid activities requiring fine visual acuity, Dr. Asad concluded that Plaintiff has marked

limitations in performing activities which require fine visual acuity, and Dr. Kenney observed

that Plaintiff has significant difficulty in performing tasks requiring visual acuity, which would

significantly impact his potential for employment).

Indeed, the ALJ himself explicitly found that Plaintiff does indeed suffer from the

severe impairment of presbyopia (ECF No. 13 at 25), "a finding which conflicts with his later

claim that Plaintiff is capable of frequently utilizing fine visual acuity and with his evaluation of

Dr. Li's opinion." *See* ECF No. 18-1 at 16. In sum, the "ALJ failed to adequately consider and

evaluate evidence" concerning Plaintiff's visual limitations, such that remand for further

proceedings is warranted on this ground alone. *Catsigiannis*, No. 08-CV-2177 ENV LB, 2013

WL 2445046, at *4; *see also* ECF No. 18-1 at 17 ("The ALJ's erroneous evaluation of the

opinion evidence resulted in an unexplained RFC that the record simply does not support. Each

of the jobs the ALJ identified as available to Plaintiff at Step 5 requires frequent near/fine visual

acuity. Thus, had the ALJ not erroneously rejected the opinions and observations of all five

medical experts, Plaintiff could not have been found to have the capacity for any of those jobs

and would have been found disabled"); *Sutton v. Comm'r of Soc. Sec.*, No. 20-CV-3441 (PKC),

2022 WL 970748, at *7 (E.D.N.Y. Mar. 31, 2022) ("Because the ALJ improperly evaluated the

medical source opinions, the Court must remand for further proceedings.").

The Court finds the ALJ similarly erred on two other grounds – *first*, the ALJ erred in

finding Plaintiff capable of frequent handling and fingering without supporting evidence, contrary to the opinions of sources he allegedly found persuasive as well as those he did not, and *second*, the ALJ's RFC determination does not otherwise account for Plaintiff's undisputed limitations in concentrating, persisting, and maintaining pace. *See generally*, ECF No. 13. *With respect to the first point*, both Doctor Li and Doctor Levit limited Plaintiff to occasional manipulation, and, in evaluating that opinion and finding it to be "somewhat persuasive," the ALJ only expressed disagreement with the visual limitation, taking no issue with the limitation to occasional manipulation. *Id*. "Indeed, the limitation to occasional manipulation is consistent with motor testing which showed Plaintiff performed severely below average in all areas of motor skill and with Dr. Kinney's observations that Plaintiff has fine motor deficits demonstrated by the inability to place notched pegs into a board and difficulty with other fine motor dexterity tasks such as writing and organizing puzzles." ECF No. 18-1 at 18.

"While the ALJ is not required to adopt every limitation from a persuasive medical source, his findings and reasoning must nevertheless be articulated." *Id*.; *see also Long v. Berryhill*, No. 18-CV-1146 (PKC), 2019 WL 1433077, at *4 (E.D.N.Y. Mar. 29, 2019) (internal citations omitted) (cleaned up) ("[A]n ALJ is not obligated to accept every part of a doctor's opinion, even if he accords the opinion significant weight. Nevertheless, he still has a duty to explain why he gave significant weight to portions of the doctors' opinions ... while selectively ignoring other parts of the opinions that support Plaintiff's disability claim."); *Kathleen M.,* No. 8:20-CV-1040 (TWD), 2022 WL 92467, at *9 ("The ALJ's errors in evaluating medical opinions impacted her conclusions about Plaintiff's symptoms and Plaintiff's residual functional capacity. This Court cannot conduct a meaningful review of those conclusions because the ALJ's decision lacks analysis of Plaintiff's symptoms in relation to the

evidence.").

*With respect to the second point*, the RFC does not address the limitations Dr. Porcelli opined on two separate occasions that Plaintiff has in sustaining concentration and in performing a task at a consistent pace, which, Dr. Porcelli found, may significantly interfere with Plaintiff's ability to function on a daily basis.  *See* ECF No. 13 at 34. While the ALJ found Dr. Porcelli's opinion "persuasive," his decision fails to explain why the limitations were not accounted for in determining Plaintiff's RFC. *Id*.; *see also* ECF No. 18-1 at 20 ("Even the ALJ [acknowledged] that Plaintiff has moderate limitations in all four broad areas of mental functioning, including in concentrating, persisting, and maintaining pace. Yet, the RFC found by the ALJ is silent on the issue."); *Cf. Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) ("Based on a thorough examination of the evidence of Cichocki's relevant limitations and restrictions, the ALJ concluded that Cichocki's impairments did not preclude her from light work, subject to specified modifications."); *Bruce H. v. Comm'r of Soc. Sec.,* 1:21-CV-00596-LJV, 2024 U.S. Dist. LEXIS 72973, at *5 (W.D.N.Y. Apr. 22, 2024) ("As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.")

"The Court cannot conduct meaningful review of the Commissioner's decision where an ALJ's cursory statements and findings obscure the actual reasons that underpin the RFC assessment." *Long*, No. 18-CV-1146 (PKC), 2019 WL 1433077, at *3; *see also Soto v. Commissioner*, No. 17-CV-2377 (PKC), 2018 WL 3241313, at *2 (E.D.N.Y. July 2, 2018) ("It is not incumbent upon this Court to attempt to discern the reasoning behind the ALJ's conclusion."). Accordingly, remand is warranted here. *See e.g.*, *Long*, No. 18-CV-1146 (PKC), 2019 WL 1433077, at *3 (internal citations omitted) (remand is appropriate where "inadequacies

in the ALJ's analysis frustrate meaningful review, such as when the ALJ makes credibility

determinations and draws inferences from the record, yet fails to fully explain the basis for

them"); *Warcholak v. Colvin*, No. 1:16-cv-00129(MAT), 2017 U.S. Dist. LEXIS 20806, at *13

(W.D.N.Y. Feb. 14, 2017) (remanding the matter where "the ALJ and the Appeals Council

misapplied the relevant legal standards, and failed to properly develop the record by obtaining a

function-by-function assessment from a medical expert"); *Balotti v. Comm'r of Soc. Sec.*, 605 F.

Supp. 3d 610 (S.D.N.Y. 2022) (granting the plaintiff's motion and remanded the case for further

proceedings, where the ALJ: (i) failed to assess the supportability component of the new

regulations since he omitted the source of the doctors' opinions; (ii) erred in relying upon clinical

and objective findings and did not explain how they were inconsistent with the doctor's opinion;

(iii) improperly drew medical conclusions herself; (iv) cherry picked portions of the physician's

record, especially since there were other portions discussing the severity of plaintiff's condition;

and (v) failed to separately consider the supportability and consistency factors).

**III.**    ***Defendant's Cross-Motion to Remand***

Pursuant to 42 U.S.C. § 405(g), this Court has the "power to enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). As

mentioned, "[t]he parties contest, and it is no insignificant matter, whether the case should be

remanded for a full rehearing… or remanded solely for the calculation of benefits."

*Catsigiannis*, No. 08-CV-2177 ENV LB, 2013 WL 2445046, at *4–5. "A remand for a

rehearing is appropriate when 'further findings would so plainly help to assure the proper

disposition of the claim.'" *Id*. (quoting *Butts,* 388 F.3d at 385).

"Relatedly, where an ALJ fails to adequately evaluate evidence concerning plaintiff's

condition during the relevant period, thus disobeying the requirement to develop the record, full

remand for further proceedings by the Commissioner is appropriate." *Id*.; *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999) ("Failure to give good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand."); *Anderson v. Astrue*, No. 07-CV-4969, 2009 WL 2824584 (E.D.N.Y. Aug. 28, 2009) (ALJ is prohibited from using "pick and choose" approach in determining which doctors' opinions she would heed and which ones she would not without providing explanation); *Rosa v. Callahan*, 168 F.2d 72, 82-83 (2d Cir. 1999) (remand may be made pursuant to § 405(g) in cases which the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the law and regulations).

However, "where courts have found no apparent basis to conclude that a more complete record might support the Commissioner's decision, they have opted simply to remand for a calculation of benefits." *Catsigiannis*, No. 08-CV-2177 ENV LB, 2013 WL 2445046, at *4–5. "Though a district court has discretion to do so, remanding solely for the calculation of benefits is considered an 'extraordinary action,' and if the court cannot say 'with certainty what weight should be assigned ... to the opinions of plaintiff's treating physicians, or whether further clarification of the record ... might alter the weighing of evidence,' a full remand is appropriate." *Id*. (cleaned up) (quoting *Rivera v. Barnhart,* 423 F.Supp.2d 271, 279 (S.D.N.Y.2006) and *Schaal v. Apfel,* 134 F.3d 496, 504 (2d Cir.1998)).

Here, the Court finds, and the Commissioner acknowledges, that in finding Plaintiff not disabled, the ALJ failed to make necessary factual findings regarding Plaintiff's limitations, such that "remand is necessary for further evaluation of the opinion evidence regarding Plaintiff's visual and manipulative limitations." *See* ECF No. 18-4 at 14. As such, while remand is necessary to make additional factual findings regarding Plaintiff's limitations and the opinion evidence, reversal for calculation of benefits is not appropriate. *See e.g*., *Patel v. Colvin*, No. 10-CV-04617 (ENV), 2013 WL 3873234, at *10 (E.D.N.Y. July 25, 2013) (citing *Pratts v. Harris*,

626 F.2d 225, 235 (2d Cir.1980) ("Such a remedy is only appropriate 'when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.'"); *see also Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) ("When reviewing the Commissioner's decision, [district courts] bear in mind that the ultimate determination of whether a person has a disability within the meaning of the Act belongs to the Commissioner"); *Catsigiannis*, No. 08-CV-2177 ENV LB, 2013 WL 2445046, at *4–5 ("Here, upon review of the record, the Court cannot say that assigning appropriate weight to Catsigiannis's treating physicians there is but one result the law allows. Therefore, full remand is necessary.").

Accordingly, this matter is "remanded to the Commissioner for further consideration—as opposed to remanded solely for calculation of benefits—because the record contains conflicting medical evidence that could plausibly command a legally sufficient denial of benefits, and the discretion to resolve those conflicts lies solely with the Commissioner." ECF No. 18-4 at 23; *Kessler v. Comm'r of Soc. Sec*.., 17-cv-4264 (JMA), 2020 WL 1234199, at *5 (E.D.N.Y. Mar. 13, 2020) (The "reviewing court will order remand for further proceedings when the Commissioner failed to provide a full and fair hearing, made insufficient findings, or incorrectly applied the applicable laws and regulations."); *see also Johnson v. Bowen,* 817 F.2d 983 (2d Cir.1987) (reversing lower court's to remand solely for calculation of benefits because the record could possibly support a denial of benefits once explored more fully).

*Finally,* "the Court is aware of the fact that [Plaintiff] has been waiting [over four] years for a complete and properly evaluated determination of his eligibility for disability benefits, and that long delays can cause uncertainty and turmoil in the lives of claimants. However, absent sufficient substantially unequivocal evidence of disability, delay alone is not a valid basis for remand solely for calculation of benefits." *Catsigiannis*, No. 08-CV-2177 (ENV)(LB), 2013 WL

2445046, at *4–5. While *"*delay alone is not a sufficient ground for remand solely to calculate benefits, this Court may soften the protracted delay of a full remand by imposing a reasonable time limit on the Commissioner's decision." *Id.; see e.g.*, *Butts.* 388 F.3d at 387 (directing further proceedings before an ALJ be completed within 60 days of the issuance of the district court's order and, if that decision is a denial of benefits, a final decision of the Commissioner be rendered within 60 days of plaintiff's appeal from the ALJ's decision).

Accordingly, "in light of the lengthy elapse of time since the initial filing for benefits, fairness and justice requires prudent remand be with direction for expedited consideration," and it is ordered "the decision by the new ALJ is to be entered within 60 days of the entry of this Order on the docket and, if that decision is a denial of benefits, a final decision of the Commissioner be rendered within 60 days of plaintiff's appeal from the ALJ's decision." *Id.*

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 18-1) is **GRANTED** *in part* and **DENIED** *in part,* and Defendant's Cross-Motion to Remand (ECF No. 18-3) is **GRANTED**. The ALJ's Decision is therefore **REVERSED and the matter is hereby REMANDED** for further administrative proceedings pursuant to 42 U.S.C. § 405(g), consistent with this Order. The decision by the ALJ is to be entered **within sixty (60) days** of the entry of this Order on the docket and, if that decision is a denial of benefits, a final decision of the Commissioner be rendered **within sixty (60) days** of Plaintiff's appeal from the ALJ's decision.

Dated: Central Islip, New York
February 12, 2025

S O   O R D E R E D:
/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

37